UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DATTO, INC., and
DATTO EUROPE LIMITED,

    Plaintiffs,

v.                      Case No. 8:20-cv-2446-T-33TGW

DANIEL MOORE,

    Defendant.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Daniel Moore's Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement and/or Summary Judgment (Doc. # 21), filed on November 4, 2020. Plaintiffs Datto Europe Limited and Datto, Inc., responded on November 18, 2020. (Doc. # 34). For the reasons that follow, the Motion is denied.

**I.**   **Background**

Datto, Inc. ("Datto") "is the leading provider of cloud-based software and technology solutions, delivered through managed service providers ('MSPs') to small and medium businesses ('SMBs')." (Doc. # 1 at 4). "Datto's software and technology solutions are delivered or sold to SMBs by its

1

worldwide network of MSPs. Each member of Datto's MSP network is referred to as an 'MSP' or 'MSP partner.'" (Id.). "An MSP is an IT professional or company that manages a customer's IT infrastructure by handling functions, such as managing network infrastructure (including email), hosting servers, and protecting data." (Id. at 5). "Datto's product engineers invest significant time refining Datto's suite of technology products based on hours of surveying and researching the market pressures facing its MSP partners and their small and medium business clients." (Id.).

Moore accepted a position with Datto Europe Limited ("Datto Europe") in the United Kingdom in December 2018 and began working there in January 2019. (Id.). Moore served as "Director of Commercial Operations, EMEA" and "was broadly responsible for helping to drive Datto's revenue by analyzing and compiling data and implementing tools and strategies to grow Datto's global sales, increase market share, to identify the needs of current and prospective MSP partners, and to improve the operational efficiency of Datto's sales efforts." (Id.). "Moore was the primary 'deal desk' approver for deals involving the EMEA (i.e., Europe, the Middle East, and Africa) and APAC (i.e., Asia-Pacific) regions and was the secondary approver for U.S. deals." (Id. at 6). "Another key

responsibility of Moore's position was to analyze Datto's sales reports, market research, and other intelligence to help identify markets where Datto could increase its market share by either increasing its sales with current MSP partners or strategically pursuing engagements with new MSPs." (Id.).

As a result of his position, Moore had access to various types of confidential information maintained by Datto and Datto Europe for their business globally. (Id. at 6-10). Because of the value of this confidential information, Datto and Datto Europe take many steps to protect the information, including asking employees to sign confidentiality and non-competition agreements. (Id. at 10-11). Moore signed an Employment Agreement on December 6, 2018, which contains a "Confidential Information" clause, as well as "Non-competition," "Non-poaching," "Non-solicitation," and "Non-dealing" provisions. (Id. at 12).

The "Confidential Information" clause — Clause 15 — provided that Moore must "respect and preserve the confidentiality of the Confidential Information for a period of five years after the date of such disclosure" and that the "duty of confidentiality continue[d] to apply after termination of [his] employment." (Id. at 12-13). Clause 14 contained the restrictive covenants, which continue in effect

for six months after the termination of employment. (Id. at 13-14). "Although the Employment Agreement states it shall be interpreted and construed in accordance with English law, the Employment Agreement identifies that either party may enforce the provisions contained therein 'in the courts of any jurisdiction having competence to issue an injunction directly enforceable against such party.'" (Id. at 14).

In July 2020, Moore's employment was terminated, although he ceased performing work in May 2020 when he was notified of the impending termination. (Id. at 15). "On July 24, 2020, Moore also entered into the Settlement Agreement, in which he acknowledged that [Clauses] 14 and 15 of his Employment Agreement survived and remained enforceable." (Id. at 14).

He mailed his two work laptops back to Datto Europe that August. (Id. at 15). "Forensic analysis shows that between May 11, 2020, when he was informed of his redundancy, and August 3, 2020, after the end of his employment, Moore inserted at least four different USB storage devices into his Datto laptops, which contain hundreds of confidential Datto documents." (Id.). According to Datto and Datto Europe, Moore "had no business reason to access his Datto laptops" at this time, he "never returned any of these USB devices to Datto

and, upon information and belief, Moore is currently in possession of these devices that contain hundreds of confidential Datto documents." (Id.). Additionally, on August 3, 2020, Moore allegedly "accessed hundreds of confidential files on the laptops after inserting an USB device into his Datto-issued laptops for the purpose of misappropriating Datto's confidential trade secrets information." (Id. at 16). "The documents Moore accessed and misappropriated contain, among other things, information about current and target customers, spend by customer and product, sales forecasts, and geographic regions ranked by sales opportunities." (Id.).

Then, despite the non-competition provisions of the Employment Agreement, Moore began working with Datto's direct competitor, ConnectWise, in Tampa, Florida, on September 1, 2020. (Id. at 18). The complaint alleges that "Moore's role as Vice-President of Sales Operations at ConnectWise is similar to, and in direct competition with, the role and responsibilities he was performing for Datto" and his "new duties with ConnectWise involve the same responsibilities he performed for Datto, including driving revenue, formulating strategies for increasing market share in new and existing markets, assessing the needs of current MSP partners, identifying ways to grow the MSP network, and generally

improving sales performance and efficiency." (Id.). Moore's knowledge and possession of Datto and Datto Europe's confidential information allegedly "will assist him" in his duties at ConnectWise by "giv[ing] [him] a nuanced understanding of the needs of Datto's MSP partners and critically, vulnerable areas that ConnectWise can exploit." (Id. at 19). Datto and Datto Europe aver that "Moore is in possession of, and is using, Datto's confidential information, such as its customer list, sales data, financial metrics and global business strategies, in his new role for ConnectWise." (Id. at 20).

Datto and Datto Europe initiated this action on October 19, 2020, asserting the following claims: breach of contract regarding the confidential information provision of the employment agreement (Count I); breach of contract regarding the non-competition provision of the employment agreement (Count II); violation of the Defend Trade Secrets Act ("DTSA") (Count III); violation of the Florida Uniform Trade Secrets Act ("FUTSA") (Count IV); and violation of the Computer Fraud and Abuse Act ("CFAA") (Count V). (Doc. # 1).

Now, Moore has moved to dismiss, or alternatively for a more definite statement or summary judgment. (Doc. # 21).

Datto and Datto Europe have responded (Doc. # 34), and the Motion is ripe for review.

## II.   **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . [if it] is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such motions are disfavored because the Federal Rules generally require only notice pleadings. <u>Scarfato v. Nat'l Cash Reg. Corp.</u>, 830 F. Supp. 1441, 1443 (M.D. Fla. 1993).

Therefore, "[t]he basis for requiring a more definite statement is not that the complaint lacked details but rather that the complaint is unintelligible and the defendant is unable to respond." <u>Riviera Fort Myers Condo. Ass'n, Inc. v. QBE Ins. Corp.</u>, No. 2:13-cv-494-FtM-38UAM, 2013 WL 12388599, at *1 (M.D. Fla. Aug. 14, 2013). "If a pleading provides sufficient notice of the claim or defense, litigants should obtain additional details through the liberal discovery rules and not through Rule 12(e)." <u>Burnetti v. Westchester Fire Ins. Co.</u>, No. 8:18-cv-482-T-23JSS, 2018 WL 7253073, at *2 (M.D. Fla. May 24, 2018)(citation omitted).

III. **Analysis**

A.   **Forum Selection Clause**

First, Moore argues that this case belongs in an English court because the July 2020 Settlement Agreement includes an exclusive forum selection clause. (Doc. # 21 at 8). The Court disagrees.

Typically, "[t]o obtain dismissal for *forum non conveniens*, '[t]he moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1028 (11th Cir. 2014)(quoting Leon v. Millon Air, Inc., 251 F.3d 1305, 1310–11 (11th Cir. 2001)).

Still, "the Supreme Court in [Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas, 134 S. Ct. 568 (2013)] explained that an enforceable forum-selection clause carries near-determinative weight in this analysis." GDG Acquisitions, LLC, 749 F.3d at 1028.

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for

> themselves or their witnesses, or for their pursuit
> of the litigation. . . . As a consequence, a
> district court may consider arguments about public-
> interest factors only. Because those factors will
> rarely defeat a transfer motion, **the practical
> result is that forum-selection clauses should
> control except in unusual cases**.

Atl. Marine, 134 S. Ct. at 582 (internal citations omitted

and emphasis added). "Thus, a district court now must consider

an enforceable forum-selection clause in the *forum non

conveniens* analysis." GDG Acquisitions, LLC, 749 F.3d at

1029.

The Atlantic Marine analysis "presupposes a

contractually valid forum selection clause." Atl. Marine, 134

S. Ct. at 581 n.5. Therefore, the Court must determine whether

the forum selection clause is, in fact, valid. "Beyond

validity, in analyzing the application of a forum-selection

clause a court must determine whether the claim or

relationship at issue falls within the scope of the clause —

by looking to the language of the clause itself — and whether

the clause is mandatory or permissive." Blue Ocean Corals,

LLC v. Phoenix Kiosk, Inc., No. 14-CIV-61550, 2014 WL 4681006,

at *4 (S.D. Fla. Sept. 19, 2014).

The validity of the Settlement Agreement's forum

selection clause is not challenged. Rather, the parties

disagree over whether the claims in this action fall within

10

the scope of that forum selection clause.[1] "To determine if a claim falls within the scope of a clause, we look to the language of the clause." <u>Bahamas Sales Assoc., LLC v. Byers</u>, 701 F.3d 1335, 1340 (11th Cir. 2012).

Here, the Settlement Agreement's forum selection clause states: "This Agreement shall be governed by and construed in accordance with the laws of England and the English courts shall have exclusive jurisdiction for all purposes **connected**

---

[1] Here, although both the Settlement Agreement and Employment Agreement's choice of law provisions select English law, Moore failed to analyze English contract law on the issue of whether Datto and Datto Europe's claims fall within the scope of the Settlement Agreement's forum selection clause. Instead, Moore only cited federal cases from within the Eleventh Circuit when analyzing the scope of the forum selection clause. (Doc. # 21 at 11-13). At most, when discussing whether a court should enforce a mandatory forum selection clause apart from the scope issue, Moore asserts that "applying English law does not change this Court's analysis." (<u>Id.</u> at 16). Similarly, Datto and Datto Europe do not analyze English law regarding their discussion of scope, instead citing federal and Florida case law. (Doc. # 34 at 7-9). Thus, given the parties' apparent agreement that English law should not be considered in determining the scope of the forum selection clause, the Court will apply the law of this forum. <u>See</u> <u>Harris v. Kellogg, Brown & Root Servs., Inc.</u>, 796 F. Supp. 2d 642, 651 (W.D. Pa. 2011)("The parties . . . generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case. Where parties fail to satisfy either burden the court will ordinarily apply the forum's law." (citation omitted)).

**with this Agreement.**" (Doc. # 21-1 at 12)(emphasis added). And the Settlement Agreement makes clear that its purpose was to resolve "any claims which [Moore] has or may have against the Company." (Id. at 3). But the claims in this case are not "connected with" Moore's termination or the potential employment claims Moore was settling through the Settlement Agreement, and thus the claims here are not connected with the Settlement Agreement. See Newco Energy Acquisitions Holdings, LLC v. Shulgen, No. 12-81249-CIV, 2013 WL 12149763, at *3 (S.D. Fla. Mar. 28, 2013)("[T]he Court interprets the phrase 'in connection with' to encompass fewer situations than a broad 'in any way related to' clause."). Rather, the claims at issue here involve Moore's subsequent employment with a direct competitor, as well as his allegedly copying numerous confidential documents from Datto's laptop after his employment with Datto had ended.

Additionally, the claims in this case are not brought under the Settlement Agreement. Instead, three claims are brought under Florida or federal statutes and the two breach of contract claims are based on alleged violations of the Employment Agreement's confidentiality and non-compete provisions. (Doc. # 1). And, despite Moore's argument to the contrary, the Settlement Agreement does not supersede the

12

relevant clauses of the Employment Agreement. True, the Settlement Agreement contains a merger clause stating that it "sets out the entire agreement between them and supersedes all previous discussions between them and their advisers and all statements, representations, terms and conditions, warranties, guarantees, proposals, communications and understandings (if any)." (Doc. # 21-1 at 12).

But, even if that merger clause could be interpreted as superseding some parts of the Employment Agreement, the Settlement Agreement also contains an explicit acknowledgment by Moore that "he continues to be bound by Clauses 14 and 15 of the Contract of Employment both before and after the Termination Date" — the confidentiality and non-compete provisions of the Employment Agreement. (Doc. # 21-1 at 7). Therefore, while Moore tries to cast this as an incorporation of the Employment Agreement's Clauses 14 and 15, the Settlement Agreement simply did not alter the binding legal effect of those clauses of the Employment Agreement on Moore.

And Clause 15.7 of the Employment Agreement provides that "either party may enforce the other party's obligation of confidence in the courts of any jurisdiction having competence to issue an injunction directly enforceable against such party." (Doc. # 1-2 at 6). Thus, the Settlement

Agreement did not eliminate Datto and Datto Europe's ability to file suit in any court with jurisdiction to issue an injunction, which includes this Court. Furthermore, the Court agrees with Datto and Datto Europe that the phrase "obligation of confidence" does not limit them to bringing only a breach of contract claim under the confidentiality clause of the Employment Agreement in this Court. (Doc. # 34 at 10). Both the confidentiality and non-compete clauses of the Employment Agreement are intended to prevent Moore from sharing Datto's confidential information with others, including future employers. See Quirch Foods LLC v. Broce, No. 3D20-842, 2020 WL 6053263, at *10 (Fla. 3rd DCA Oct. 14, 2020)("Companies who provide confidential information to [their] employees need to know that [they] will be protected if an employee resigns or is terminated because the non-compete agreement will be enforced."); Littlewoods Organisation Ltd. v Harris [1977] 1 WLR 1472, 1479 ("[E]xperience has shown that it is not satisfactory to have simply a covenant against disclosing confidential information. . . . [T]he only practicable solution is to take a covenant from the servant by which he is not to go t[o] work for a rival in trade.").

In short, the claims in this case do not fall within the scope of the Settlement Agreement's forum selection clause

14

and the Employment Agreement's forum selection clause is still in force. Because the Court finds the forum selection clause in the Settlement Agreement does not apply to the claims in this case, dismissal based on that forum selection clause is unwarranted. Furthermore, the Court need not convert the Motion to a motion for summary judgment because the Court has already considered the Settlement Agreement and determined that the Settlement Agreement's forum selection clause does not apply.

**B.   Failure to State a Claim & More Definite Statement**

Moore also argues that the complaint should be dismissed because it is a shotgun complaint and fails to state claims for relief or, alternatively, the Court should require Datto and Datto Europe to provide a more definite statement of their claims.

**1.   Shotgun Complaint**

First, Moore argues the complaint is a shotgun complaint because it incorporates all the background section paragraphs into each count. (Doc. # 21 at 24). "But this does not render the [complaint] a shotgun complaint. It is perfectly acceptable that each count of the [complaint] incorporates all of the general factual allegations, so long as the counts do not incorporate the allegations of the previous counts."

15

Alvarez v. Lakeland Area Mass Transit Dist., No. 8:19-cv-
1044-T-33SPF, 2019 WL 2868943, at *3 (M.D. Fla. July 3, 2019);
see also Weiland v. Palm Beach Cty. Sheriff's Office, 792
F.3d 1313, 1324 (11th Cir. 2015)("[Plaintiff's] re-alleging
of paragraphs 1 through 49 [from the fact section] at the
beginning of each count looks, at first glance, like the most
common type of shotgun pleading. But it is not."). Thus, the
complaint is not a shotgun complaint.

### 2.   Failure to State a Claim

Next, Moore argues that each of the five counts fails to
state a claim.

### a.   Breach of Non-Compete

Moore argues that the complaint fails to state a
plausible claim that he breached the non-compete clause of
the Employment Agreement. (Doc. # 21 at 19). Specifically, he
points out the language from the "Further Particulars"
section of the Employment Agreement stating:

> There are no terms applying to this Agreement which
> relate to the following: [1] the period for which
> the employment is intended to continue or the date
> when it is to end; [2] any collective agreements
> which directly affect the terms and conditions of
> employment; [and] [3] **Work outside the United
> Kingdom.**

(Doc. # 1-2 at 10)(emphasis added).

As the complaint acknowledges, Moore worked for ConnectWise in the United States. (Doc. # 1 at 17-18). Therefore, according to Moore, Count II does not allege a plausible violation of the Employment Agreement.

Importantly, however, Moore fails to cite any law — let alone English law — to support his argument. The choice of law provision in the Employment Agreement selected English law. (Doc. # 1-2 at 6)("This agreement shall be interpreted and construed in accordance with English law."). Thus, English law applies to the breach of contract claims. Without any guidance from Moore on why his argument succeeds under English law, the Court is unpersuaded by his argument. See Harris, 796 F. Supp. 2d at 651 (explaining that Federal Rule of Civil Procedure 44.1 "imposes no obligation on this Court to determine foreign law on its own accord").

Furthermore, the only English law before the Court is that presented by Datto and Datto Europe in their response. (Doc. # 34 at 12-13). And the authority cited by Datto and Datto Europe supports that the context of the Employment Agreement, including facts outside the agreement, may be considered to interpret this provision regardless of whether it is ambiguous. See Westminster City Council v. Nat'l Asylum Support Serv. [2002] 1 WLR 2956, 2958 ("It is therefore wrong

to say that the court may only resort to evidence of the contextual scene when an ambiguity has arisen."); <u>Reardon Smith Line Ltd v. Yngvar Hansen-Tangen (trading as H E Hansen-Tangen)</u> [1976] 1 WLR 989, 995-96 ("In a commercial contract it is certainly right that the court should know the commercial purpose of the contract and this in turn presupposes knowledge of the genesis of the transaction, the background, the context, the market in which the parties are operating.").

The Court agrees with Datto and Datto Europe that the meaning of this provision "cannot be decided on the basis of [the] [c]omplaint alone" "because contextual matters — such as, the genesis of the transaction, the background, and the market in which the parties are operating, which are factual issues — must be considered." (Doc. # 34 at 14). Thus, the Motion is denied as to Count II. Moore may raise this argument again at the summary judgment stage.

### b. __Breach of Confidentiality__

Regarding Count I for breach of the confidentiality clause of the Employment Agreement, Moore argues without any citation to authority that the claim should be dismissed because "the information at issue is that which has belonged to [Moore], third parties or was in the public domain, or is

otherwise non-proprietary, and is therefore excluded from the definition of Confidential Information." (Doc. # 21 at 19). He argues the information he allegedly accessed and retained, thus, does not fit the Employment Agreement's definition of confidential information, which includes information "which is not known outside of the Company or which the Company compiled or collected at significant expense or effort." (Doc. # 1-2 at 5).

The Court rejects this argument, which would be better raised at summary judgment. The complaint alleges that Moore "misappropriated and failed to return [], among other things, confidential information regarding Datto's sales operations and prospective opportunities globally, 2020 sales quotas, plans and targets for Datto's sales representatives in EMEA, confidential compensation information for all Datto sales representatives globally, [and] confidential and proprietary information about Datto's MSP partners." (Doc. # 1 at 16). According to the complaint, the misappropriated information "derive[s] independent economic value from not being regularly known" and Datto and Datto Europe "invest[] significant time and resources to collect and analyze the data" in the misappropriated information. (Id.). Taking these allegations as true at the motion to dismiss stage, Datto and

19

Datto Europe have sufficiently alleged a breach of the Employment Agreement's confidentiality clause. The Motion is denied as to Count I.

### c.   DTSA and FUTSA Claims

DTSA "creates a private cause of action in favor of the 'owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'" Adams Arms, LLC v. Unified Weapon Sys., Inc., No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394, at *5 (M.D. Fla. Sept. 27, 2016)(quoting 18 U.S.C. § 1836(b)(1)). Under DTSA, a plaintiff "must show (1) it possessed information of independent economic value it lawfully owned and for which it took reasonable measures to keep secret; and (2) [the defendant] used or disclosed that information despite a duty to maintain its secrecy." ActivEngage, Inc. v. Smith, No. 6:19-cv-1638-Orl-37LRH, 2019 WL 5722049, at *3 (M.D. Fla. Nov. 5, 2019), appeal dismissed, No. 19-14850-JJ, 2020 WL 3042093 (11th Cir. Mar. 5, 2020). Similarly, under FUTSA, a plaintiff must allege "(1) [it] possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated." Id. (citation

omitted). Claims under "FUTSA and DTSA can be analyzed together." Id.

Moore argues that the claims under DTSA and FUTSA, Counts III and IV, fail to state plausible claims for relief because the complaint lacks sufficient detail. (Doc. # 21 at 20-21). He insists the complaint only includes "threadbare assertions" that "simply recite the elements of a trade secret" and fails "to assert any well pled factual allegations that Defendant actually copied and disclosed any trade secret information." (Doc. # 21 at 20-21).

The Court disagrees. Datto and Datto Europe have sufficiently pled claims under both statutes. The complaint provides sufficient detail to support that the allegedly misappropriated information qualified as trade secrets that have independent economic value. Much of that information — including sales quotas, confidential compensation information, and information regarding products purchased by MSPs — took significant resources to collect and "gives Datto a substantial competitive advantage over its competitors because it gives Datto a broad insight into the buying behaviors of MSPs." (Doc. # 1 at 16); see Lighthouse List Co., LLC v. Cross Hatch Ventures Corp., No. 13-60524-CIV, 2013 WL 11977916, at *7 (S.D. Fla. Aug. 13, 2013)(denying

motion to dismiss FUTSA claim where the complaint "describe[d] with reasonable particularity the information alleged to be misappropriated, including but not limited to: business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, rate and data cards, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans").

The complaint also alleges Datto and Datto Europe keep this information secret by having employees sign confidentiality agreements, providing access to that information on a "need-to-know basis," and using password protection and security software. (Id. at 27, 30); see RxStrategies, Inc. v. CVS Pharmacy, Inc., 390 F. Supp. 3d 1341, 1352 (M.D. Fla. 2019)(finding the existence of a trade secret was sufficiently alleged at the motion to dismiss stage where plaintiff alleged it expended significant effort to compile the customer information and "restrict[ed] access to authorized users only via password-protected portals"). Thus, Datto and Datto Europe have sufficiently alleged that the information at issue included at least some trade secrets that it takes reasonable steps to keep secret.

Additionally, regarding whether Moore actually copied and disclosed trade secret information, the Court finds that the complaint sufficiently alleges this element of the claim. Specifically, the complaint raises the plausible inference that Moore copied the trade secret information onto his USB devices when he inserted those USB devices into the laptop and accessed confidential information on the laptop after his employment had ended. (Doc. # 1 at 15-16, 26, 29). Finally, the complaint alleges Moore "is improperly using Datto's trade secret information in his capacity as an employee of ConnectWise." (Id. at 28). The complaint explains at length Moore's new position with ConnectWise and how Moore's alleged possession of the confidential information "will assist him" at ConnectWise by "giv[ing] [him] a nuanced understanding of the needs of Datto's MSP partners and critically, vulnerable areas that ConnectWise can exploit." (Id. at 19).

The Court must accept these allegations as true at this stage and, taken together, these allegations raise a reasonable inference that Moore actually used the confidential information. See Trinity Graphic, USA, Inc. v. Tervis Tumbler Co., 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018)("The misappropriation allegations, whether or not Defendant Tervis's actions were improper and met the

statutory definition of 'misappropriation' are also questions of fact that cannot be resolved on a motion to dismiss. The Amended Complaint contains detailed allegations that Tervis misappropriated Plaintiff's trade secrets by acquiring them through improper means and disclosing them to third parties.").

Thus, the Court denies the Motion to the extent it seeks to dismiss Counts III and IV.

### d.   **CFAA Claim**

The CFAA "prohibits accessing a computer and obtaining information without authorization or by exceeding authorized access." Agilysys, Inc. v. Hall, 258 F. Supp. 3d 1331, 1340 (N.D. Ga. 2017)(citation omitted). "Although principally a criminal statute, the CFAA provides that 'any person who suffers damage or loss [as a result of a violation] . . . may maintain a civil action . . . for compensatory damages and injunctive relief or other equitable relief.'" Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1341 (N.D. Ga. 2007)(quoting 18 U.S.C. § 1030(g)).

In Count V, Datto and Datto Europe allege Moore violated Section 1030(a)(2)(C) of the CFAA, which provides that a person violates the CFAA if he "intentionally accesses a computer without authorization or exceeds authorized access,

24

and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). "The CFAA does not define the phrase 'without authorization,' but it defines 'exceeds authorized access' as 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" EarthCam, Inc. v. OxBlue Corp., 703 F. App'x 803, 808 (11th Cir. 2017)(quoting 18 U.S.C. § 1030(e)(6)).

Moore argues that Count V, the CFAA claim, fails to state a claim because it fails to include: (1) "facts that support the conclusion that Defendant exceeded his authorized use" of the computer system; (2) "well pled facts that support the conclusion that [Moore] misused data he obtained from Plaintiffs' computer"; (3) allegations that Moore's "activities on the computer resulted in damage"; and (4) "factual allegations that [Moore]'s actions actually resulted in" the diminished value of Datto's trade secrets and confidential information. (Doc. # 21 at 22-23).

Again, the Court disagrees. The complaint plausibly pleads that Moore "exceeded his authorized use" by alleging that Moore accessed confidential documents and copied them to a USB device after his employment had ended. Over the years,

25

there has been disagreement among district courts in this Circuit regarding the breadth of the phrase "exceeds authorized use." See Enhanced Recovery Co., LLC v. Frady, No. 3:13-cv-1262-J-34JBT, 2015 WL 1470852, at *2 (M.D. Fla. Mar. 31, 2015)(noting that "reasonable jurists consistently disagree" regarding this phrase and holding that "the CFAA's definition of 'exceeds authorized access' does not reach an employee who has permission to access proprietary information, but subsequently uses it in violation of company policy"); Aquent LLC v. Stapleton, 65 F. Supp. 3d 1339, 1346 (M.D. Fla. 2014)("Courts have split on the meaning of exceeding authorization under the CFAA.").

However, in the context of criminal CFAA actions, the Eleventh Circuit has adopted the broader view. See United States v. Rodriguez, 628 F.3d 1258, 1263 (11th Cir. 2010)(holding that even a person with authority to access a computer can be guilty of criminal computer fraud if that person subsequently misuses the computer); United States v. Van Buren, 940 F.3d 1192, 1208 (11th Cir. 2019)(upholding defendant's criminal conviction under the CFAA because "under Rodriguez, there is no question that the record contained enough evidence for a jury to convict" where the defendant police officer accessed a database he was authorized to use,

but for the improper purpose of selling information he obtained there), <u>cert. granted</u>, 140 S. Ct. 2667 (2020).[2] Thus, the broader interpretation is the correct one.

Under this broader view, Moore plausibly exceeded his authorized use when he accessed the information after he had stopped working for Datto and Datto Europe for the improper purpose of using that information at his next employment with a competitor. <u>See</u> <u>Aquent LLC</u>, 65 F. Supp. 3d at 1346 (finding at motion to dismiss stage that a defendant's "conduct exceeded her authorization because she accessed the computers for non-business-related purposes and is thus covered by the CFAA"); <u>Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.</u>, 793 F. Supp. 2d 1302, 1315 (N.D. Ga. 2011)("While there is some question of whether Plaintiff generally permitted Mack to send the Referral Logs to her personal email account, there is no question that Mack exceeded any authority she had when she sent them to herself after accepting a position at Interim for use in competing with Amedisys.").

---

[2] The Court acknowledges that <u>Van Buren</u> is currently before the Supreme Court. However, unless and until such time that the Supreme Court reverses that decision, <u>Van Buren</u> and <u>Rodriguez</u> remain binding.

Next, use of the unlawfully obtained information is not an element of a CFAA claim. But, regardless, the complaint alleges Moore is "improperly using Datto's trade secret information in his capacity as an employee of ConnectWise." (Doc. # 1 at 28).

Finally, "to bring a civil action under the CFAA, a plaintiff must suffer 'damage or loss' as a result of violation of the statute, and the conduct must be one of five enumerated types." Aquent LLC, 65 F. Supp. 3d at 1344. "Because of the disjunctive nature of the statute, plaintiffs suing under [Section] 1030(a)(2)(C) . . . are not required to plead damage in addition to the required amount of loss." Id. Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Here, the complaint sufficiently pleads loss, including "costs incurred by Datto to investigate, assess, and address Moore's misconduct," such as "the costs associated with identifying Moore's unauthorized access to Datto's computers,

computer systems, and computer networks, and the confidential information contained in the documents he has retained." (Doc. # 1 at 32). And, because the complaint pleads loss, the complaint need not plead in greater detail how the value of Datto's trade secrets and confidential information was diminished by Moore's conduct. Regardless, the complaint raises the plausible inference that the misappropriated information was diminished in value by Moore's alleged disclosure to a competitor, because the "substantial competitive advantage" this information gives Datto "would be lost if this information became known to the public or to Datto's competitors." (Doc. # 1 at 10).

The Motion is denied as to Count V.

### 3.   **More Definite Statement**

Moore's alternate request for a more definite statement of the claim is denied because the Court has found all claims of the complaint to be sufficiently pled.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Daniel Moore's Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement and/or Summary Judgment (Doc. # 21) is **DENIED.**

(2)   Moore's answer to the complaint is due within 14 days of
the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
<u>11th</u> day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE